UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Diana Louise Rinaldi, ) | Civil Action No.: 2:16-CV-1403-RBH |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| Nancy A. Berryhill, Acting Commissioner ) | |
| of the Social Security Administration, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Plaintiff Diana Louise Rinaldi ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). The matter is before the Court for review of the Report and Recommendation of United States Magistrate Judge Mary Gordon Baker, made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2) for the District of South Carolina. The Magistrate Judge recommends affirming the Commissioner's decision. [ECF #18].

**Procedural History**

Plaintiff filed this current application for disability insurance benefits ("DIB") on July 19, 2013, alleging she was unable to work. Plaintiff later amended the alleged onset date to October 1, 2013. Plaintiff's medical history was adequately set forth by the ALJ in rendering the decision in this case. Briefly stated, Plaintiff has a history of coronary heart disease and underwent stent placement in her artery in February of 2012. [ECF #9-9, Ex. 5F]. Plaintiff's records reveal that she intermittently experienced chest pain over the years, usually resolving after a few days. In February of 2013, Plaintiff sought treatment for chest pain, however a March 2013 chest x-ray was normal. She reported

experiencing chest pain in May of 2013, but her lab results were unremarkable. [ECF #9-9, Ex. 6F]. A July 2013 cardiovascular examination was normal. [ECF #9-10, Ex. 7F]. Treatment notes dated after Plaintiff's amended alleged onset date do not reveal significant cardiac abnormalities, either. In July of 2013, a CTA (computed tomography angiography) revealed moderate emphysema but no pulmonary embolism related to her COPD complaints. Plaintiff had a consultative examination in October of 2013 where, at that time, her cardiovascular examination was within normal limits. [ECF #9-10, Ex. 10F]. While Plaintiff sought treatment in December of 2013 at the hospital resulting in a normal cardiovascular examination, her stress test revealed findings somewhat consistent with stent restenosis. [ECF #9-11, Ex. 12F]. However, her pulmonary examination was also unremarkable. [ECF #9-11, Ex. 12F]. Cardiac testing performed at another hospital where she sought treatment around this same time revealed unremarkable findings. [ECF #9-12, Ex. 13F]. In January of 2014, her medical record reveals that she denied chest pain since the December 2013 discharge and did not attend the follow-up appointment scheduled after her December 2013 visit. [ECF #9-12, Ex. 22F]. In March of 2014, Plaintiff told Bonnie Treado, DNP, the nurse who was treating her, that financial constraints and family responsibilities kept her from making medical appointments. The record indicates that Ms. Treado reminded Plaintiff that her practice was federally funded, and they could help her with her financial issues. Ms. Treado also reminded Plaintiff that she could reschedule her appointment if she had to watch her grandchildren and could not make the appointed time. [ECF #9-12, Ex. 22F]. In July of 2014, Plaintiff's respiratory examination revealed rhonchi, but otherwise no wheezing. [ECF #9-12, Ex. 22F].

In October of 2014, Plaintiff stated that she was riding a bicycle daily and feeling "great." She was experiencing mild chest pains occasionally. Her December 2014 records reveal she reported chest

pain at that time, however she was still smoking a pack of cigarettes per day. [ECF #9-12, Ex. 20F]. A chest x-ray and EKG were unremarkable, and her discharge treatment notes do not attribute her chest tightness to any cardiac issues. [ECF #9-12, Ex. 20F]. In February of 2015, treatment notes indicate Plaintiff began smoking less, and her respiratory examination was benign at that time. [ECF #9-12, Ex. 22F]. In May of 2015, Plaintiff called her primary care provider complaining of chest pain and was advised to go to the emergency room, however at her follow up in June of 2015, Plaintiff reported that she did not seek the recommended treatment. [ECF #9-12, Ex. 14F]. Regarding her Factor V Leiden deficiency, the medical records generally indicate that while Plaintiff suffers from this blood clot disorder, she has not been compliant in taking her medication for this condition. While the medical records do not indicate significant complications resulting from this disorder. she did have findings suggestive of deep vein thrombosis in May 2013. [ECF #9, Ex. 1F, 6F, 7F, 10F, 22F].

Plaintiff's application for benefits was denied initially and upon review. On July 15, 2015 Plaintiff participated in a hearing, at which time she stated that her medical problems were as follows: factor V blood clot disease, two heart attacks resulting in the implantation of two stents, high cholesterol, thyroid disease, emphysema, chronic obstructive pulmonary disease ("COPD"), and asthma. [ECF #9-2, p. 36]. On September 14, 2015, Plaintiff received an unfavorable opinion from the ALJ. [ECF #9-2, p. 11]. On April 12, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's findings the final decision of the Commissioner of Social Security.

The ALJ's findings were as follows:

(1) The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.

(2) The claimant has not engaged in substantial gainful activity since October 1, 2013, the amended alleged onset date (20 C.F.R. 404.1571 *et seq.*).

3

(3) The claimant has the following severe impairments: coronary artery disease status post stent placement, chronic obstructive pulmonary disease (COPD), and Factor V Leiden mutation/blood clot disorder (20 C.F.R. 404.1520(c)).

(4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526).

(5) After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a). Specifically, the claimant can lift and carry up to 10 pounds occasionally and lesser amounts frequently, sit for 6 hours in an 8-hour day, and stand and/or walk occasionally. However, the claimant cannot have concentrated exposure to pulmonary irritants, such as dusts, fumes, odors and gases.

(6) The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565).

(7) The claimant was born on January 6, 1971 and was 41 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 C.F.R. 404. 1563).

(8) The claimant has a limited education and is able to communicate in English (20 C.F.R. 404.1564).

(9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

(10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 404.1569 and 404.1569(a)).

(11) The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2013, through the date of this decision (20 C.F.R. 404.1520(g)).

[ECF #9-2, pp. 16-26].

On May 3, 2016, Plaintiff filed a complaint seeking judicial review of the Commissioner's decision. [ECF #1]. Both Plaintiff and Defendant filed briefs [ECF #12, ECF #13, ECF #16], and the Magistrate Judge issued her Report and Recommendation ("R&R") on July 31, 2017, recommending that the Commissioner's decision be affirmed [ECF #18]. The Magistrate Judge considered all of the medical testimony within the record and determined that the ALJ properly addressed the relevant medical findings, as well as considered Plaintiff's testimony in determining that the ALJ's decision is supported by substantial evidence. [ECF #18, p. 12]. Plaintiff filed objections on August 11, 2017. [ECF #19]. Plaintiff objects to the recommendation of the Magistrate Judge based on the following reasons: (1) Plaintiff's testimony concerning her lack of insurance and/or financial resources should have been found to be "fully credible" and (2) the ALJ should have given Nurse Treado's opinion significant weight, notwithstanding the fact that she was not an "acceptable medical source." Defendant responded to these objections on August 22, 2017. [ECF #21].

**Standard of Review**

**I.    Judicial Review of the Commissioner's Findings**

The federal judiciary has a limited role in the administrative scheme established by the Act, which provides the Commissioner's findings "shall be conclusive" if they are "supported by substantial evidence." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

This statutorily mandated standard precludes a de novo review of the factual circumstances that

5

substitutes the Court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *Hicks v. Gardner*, 393 F.2d 299, 302 (4th Cir. 1968). The Court must uphold the Commissioner's factual findings "if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) (stating that even if the Court disagrees with the Commissioner's decision, the Court must uphold the decision if substantial evidence supports it). This standard of review does not require, however, mechanical acceptance of the Commissioner's findings. *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). The Court "must not abdicate [its] responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner]'s findings, and that [her] conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

II.     **The Court's Review of the Magistrate Judge's Report and Recommendation**

The Magistrate Judge makes only a recommendation to the Court. The Magistrate Judge's recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court must conduct a de novo review of those portions of the Report and Recommendation ("R & R") to which specific objections are made, and it may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Court must engage in a de novo review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the Court need not conduct a de novo review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate [Judge]'s proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d

44, 47 (4th Cir. 1982). In the absence of specific objections to the R & R, the Court reviews only for clear error, *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005), and the Court need not give any explanation for adopting the Magistrate Judge's recommendation. *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983).

### **Applicable Law**

Under the Act, Plaintiff's eligibility for the sought-after benefits hinges on whether she is under a "disability." 42 U.S.C. § 423(a). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). The claimant bears the ultimate burden to prove disability. *Preston v. Heckler*, 769 F.2d 988, 991 n.* (4th Cir. 1985). The claimant may establish a prima facie case of disability based solely upon medical evidence by demonstrating that her impairments meet or equal the medical criteria set forth in Appendix 1 of Subpart P of Part 404 of Title 20 of the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(d) & 416.920(d).

If such a showing is not possible, a claimant may also establish a prima facie case of disability by proving she could not perform her customary occupation as the result of physical or mental impairments. *See Taylor v. Weinberger*, 512 F.2d 664, 666-68 (4th Cir. 1975). This approach is premised on the claimant's inability to resolve the question solely on medical considerations, and it is therefore necessary to consider the medical evidence in conjunction with certain vocational factors. 20 C.F.R. §§ 404.1560(a) & § 416.960(a). These factors include the claimant's (1) residual functional capacity, (2) age, (3) education, (4) work experience, and (5) the existence of work "in significant numbers in the national economy" that the individual can perform. *Id.* §§ 404.1560(a), 404.1563,

404.1564, 404.1565, 404.1566, 416.960(a), 416.963, 416.964, 416.965, & 416.966. If an assessment of the claimant's residual functional capacity leads to the conclusion that she can no longer perform her previous work, it then becomes necessary to determine whether the claimant can perform some other type of work, taking into account remaining vocational factors. *Id.* §§ 404.1560(c)(1) & 416.960(c)(1). Appendix 2 of Subpart P governs the interrelation between these vocational factors. Thus, according to the sequence of evaluation suggested by 20 C.F.R. §§ 404.1520 & 416.920, it must be determined (1) whether the claimant currently has gainful employment, (2) whether she suffers from a severe physical or mental impairment, (3) whether that impairment meets or equals the criteria of Appendix 1, (4) whether, if those criteria are met, the impairment prevents him from returning to previous work, and (5) whether the impairment prevents her from performing some other available work.

## Analysis

### I. The effect of Plaintiff's efforts at smoking cessation in assessing Plaintiff's credibility

Plaintiff argues that the ALJ erred in failing to consider Plaintiff's efforts to stop smoking, which Plaintiff contends should negate any adverse inference that she chose to spend her funds on cigarettes, rather than treatment. In effect, Plaintiff is questioning the ALJ's credibility assessment of Plaintiff. The Magistrate Judge considered a related argument within the R&R with respect to whether the ALJ adequately assessed Plaintiff's inability to afford treatment under SSR 96-7p.

With respect to financial constraints in obtaining treatment, the Fourth Circuit has held that an ALJ may consider a claimant's use of cigarettes and that impact on the ability to afford treatment. *See Hill v. Colvin*, No. 7:14-CV-171-D, 2015 WL 5147604, at *6 (E.D.N.C. Aug, 10, 2015), report and recommendation adopted by 2015 WL 5164957 (E.D.N.C. Sept. 2, 2015) (noting that, "[a] claimant's

8

use of income to purchase cigarettes can undercut his allegations that he is unable to afford treatment"); *Magwood v. Astrue*, No. 6:10-2936-MBS-KFM, 2011 WL 6257159, at *8 (D.S.C. No. 21, 2011); *Mayle v. Astrue*, No. 9:06-3048 CMC-GCK, 2007 WL 4285383, at *21 (D.S.C. 2007) (rejecting the argument that a plaintiff could not afford treatment because the record showed plaintiff has resources available to obtain cigarettes). Thus, it was not error for the ALJ to consider the effect of Plaintiff's cigarette habit on her ability to afford treatment. In assessing Plaintiff's treatment generally, the ALJ noted that the medical records indicate Plaintiff was "smoking less." [ECF #9-2, p. 22]. Furthermore, a review of the hearing transcript indicates that Plaintiff testified she has "tried to quit" smoking, not necessarily that she had quit or how recent these efforts had been made to stop smoking. [ECF #9-2, p. 37]. A review of the record thus reveals that the ALJ was aware of Plaintiff's efforts in smoking cessation, but does not necessarily indicate that the ALJ did not consider this as a factor in determining Plaintiff's ability to afford treatment. Moreover, Plaintiff does not provide any legal citation suggesting that a claimant's smoking cessation efforts generally negate the impact of a claimant's smoking habit on the ability to afford treatment.

As far as Plaintiff's credibility, under its scope of review, the Court cannot make credibility determinations but may review the ALJ's decision to determine whether substantial evidence supports the ALJ's credibility assessment. *Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005). The ALJ's "decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. An ALJ may consider a claimant's non-compliance with medical advice or treatment when weighing his or her credibility. *Dunn v. Colvin*, 607 Fed App'x 264, 271 (4th Cir.

2015). Here, the ALJ found Plaintiff "partially credible" as to her explanation that she has been non-compliant with treatment due to financial constraints. [ECF #9-2, p. 23]. However, the ALJ also considered the fact that the medical treatment notes reveal that Plaintiff was provided a charity application for further treatment and was advised against deciding not to go to the emergency department or leaving the emergency department when she had chest pain. [ECF #9-2, p. 24]. Moreover, the ALJ noted that Nurse Treado spoke to Plaintiff about her federally funded practice and financial resources. Accordingly, this Court's review of the ALJ's assessment of Plaintiff's non-compliance due to lack of insurance and/or financial resources as "partially credible," and the ALJ's consideration of her smoking habit as one factor related to her ability to afford treatment, was supported by substantial evidence.

**II.     Opinion of treating nurse practitioner Bonnie Treado, DNP**

Plaintiff argues that the ALJ should have given the opinion of Bonnie Treado "significant weight." In her objections, Plaintiff acknowledges that at the time she applied for disability, Nurse Treado was not considered an "acceptable medical source." Nonetheless, Plaintiff argues that her location in a small, rural town limits her access to medical care, and she was assigned a certified nurse practitioner as her primary care provider for this reason. Thus, it is Plaintiff's contention that had the ALJ considered Nurse Treado's education level, her years of experience, and the relationship and length of care, he would have given significant weight to her opinion.

As acknowledged by Plaintiff, nurse practitioners are not considered acceptable medical sources under 20 C.F.R. § 404.1513(d)(1), at least at the time of the filing of her application for disability. However, within the Fourth Circuit, if a nurse practitioner has treated under the supervision of a physician, and within the course and scope of supervised treatment renders an opinion, then the nurse

practitioner's opinion deserves the same weight as that of a treating physician. *Palmer v. Colvin*, No. 5:13-CV-126-BO, 2014 WL 1056767, at *2 (E.D.N.C. March 18, 2014) (citing *Bond v. Astrue*, No. 4:09-CV-73-BO, at *4 (E.D.N.C. Apr. 21, 2010)); *see generally Jones v. Colvin*, No. 9:14-4339-TMC-BM, 2016 WL 1054991, at *4 (D.S.C. Mar. 17, 2016). Here, Plaintiff does not contend that Nurse Treado's treatment and subsequent opinion was conducted under a doctor's supervision and endorsement. In fact, Plaintiff's argument would tend to infer the opposite, given that she argues there was no physician available to treat her.

Under the applicable regulations, despite the fact that this nurse practitioner is not necessarily an "acceptable medical source" and may not have been working under the supervision of a physician, the ALJ still considered Nurse Treado's opinion. Nurse Treado completed a form in August of 2014 where she indicated by checking boxes that Plaintiff was permanently disabled and unable to work; however, the form also had a section with instructions to check on the form which activities a claimant could perform and for how long a claimant could perform each activity. Nurse Treado simply drew a line across that section. In analyzing this opinion, the ALJ noted and the Defendant points out in the response brief that the Commissioner makes the ultimate determination about whether a claimant is permanently disabled. Still, the ALJ considered the relatively sparse information on the form, along with the fact that Nurse Treado did not provide any specific functional limitations Plaintiff could not perform that would be inconsistent with an RFC of sedentary work. [ECF #9-2, p. 24]. Further, the ALJ considered the fact that not only did Plaintiff's treatment notes reveal generally unremarkable findings, but Nurse Treado's own notes do not document significant abnormalities which might support her assessment. [ECF #9-2, p. 24]. In fact, Plaintiff's treatment notes while being seen by Nurse Treado indicate that Plaintiff was riding a bicycle and feeling great two months after Nurse Treado's August

11

2014 opinion. Accordingly, this Court finds that substantial evidence supports the ALJ's determination regarding the weight given to this opinion.

## **Conclusion**

The Court has thoroughly reviewed the entire record as a whole, including the administrative transcript, the briefs, the Magistrate Judge's R & R, Plaintiff's objections to the R & R, Defendant's response to those objections, and the applicable law. For the foregoing reasons, the Court adopts the recommendation of the Magistrate Judge. [ECF #18]. The Commissioner's decision is affirmed.

**IT IS SO ORDERED.**

Florence, South Carolina  
September 12, 2017

s/ R. Bryan Harwell  
R. Bryan Harwell  
United States District Judge